## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSEPH GARCIA,** | : | **CIVIL NO. 3:15-CV-1389** |
| | : | |
| **Petitioner,** | : | **(Judge Caputo)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **J. ODDO, WARDEN,** | : | |
| | : | |
| **Respondent.** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

The petitioner, a federal prisoner, invites this Court to review and revise the sentence credit calculation done by the Federal Bureau of Prisons in his case. Having conducted this review, we find no error in that calculation, which properly allocates time previously served by Garcia between his various state and federal sentences. Therefore we recommend that this petition for writ of habeas corpus be denied.

In this case the interplay of state and federal sentences which forms the basis for this sentence credit calculation began on June 9, 2003, when Garcia, a criminal recidivist, was arrested by Arizona state officials and "held over for a state parole revocation hearing" at an Arizona state correctional facility. (Doc. 1 at 8-9.) Specifically, on June 9, 2003, Garcia was arrested on a parole violation warrant by Maricopa County, Arizona, state authorities for violating the conditions of his parole.

1

That parole violation arose out of an earlier state prosecution of Garcia in which he received a 14 year sentence. Therefore, with the revocation of his parole, Garcia was remanded to the primary custody of state authorities to complete service of his original 14-year state term of imprisonment imposed on January 13, 1994, in that state case. (Doc. 10-1 Erickson Decl. Ex. A ¶ 5; Inmate Detail Report Att. 3 to Erickson Decl. ) That state sentence had a maximum term of 14 years, and expired on September 30, 2007.

While Garcia served this state parole violation sentence he was also indicted federally on drug trafficking and conspiracy charges relating to large-scale cocaine trafficking. Two months after Garcia began service of this state sentence, on August 5, 2003, federal marshals took Garcia into custody pursuant to a writ of habeas corpus *ad prosequendum* following Garcia's indictment on these federal charges and "held him over for trial on a new federal indictment." (Id. at 9.) Garcia then remained temporarily in federal custody pursuant to this writ  from August 5, 2003, until April 4, 2005, when he was sentenced in the United States District Court for the District of Arizona to 210-months imprisonment, of imprisonment for "Conspiracy to Possess with Intent to Distribute Five Kilograms or More of Cocaine" in violation of 21 U.S.C. §§ 846 and 841. At the time of this federal sentencing the district court directed that Garcia's federal sentence "run concurrent with any subsequent Arizona state sentence."

(Id.)

On April 27, 2005, the federal Judgment and Commitment was lodged as a detainer with the Arizona Department of Corrections. Doc. 10-1, Erickson Decl. Ex. A ¶ 9.) Two days later, on April 29, 2005, Garcia was returned to the primary custody of the State of Arizona to complete service of his state sentence after being sentenced in the United States District Court for the District of Arizona. (Id.) On May 8, 2006, Garcia completed his Arizona state prison term and was released to the exclusive custody of the U.S. Marshals to continue serving his federal sentence in accordance with the federal detainer that had been lodged against him.(Id. ¶ 11.)

At that time the Bureau of Prisons endeavored to compute Garcia's sentence. As part of this sentence calculation prison officials computed Garcia's federal sentence based upon a 210-month term of imprisonment commencing on April 4, 2005, the date his federal sentence was imposed.  Thus, Garcia received partial sentence credit for the time spent serving these concurrent state and federal sentences between April 2005, when his federal sentence was first imposed, and May 2006, when he came into exclusive federal custody.  No other prior custody credit was awarded on his federal sentence for the period between June 2003 and the date Garcia was sentences federally in 2005 because Garcia was in state custody during this time, serving a state parole violation sentence, and was simply held by federal officials on a writ of habeas corpus *ad prosequendum* during this time.

3

Dissatisfied with this sentence calculation, Garcia filed this petition for writ of habeas corpus challenging the Bureau of Prisons' sentence calculation. (Doc. 1.) This petition is fully briefed by the parties, (Docs. 1, 10, and 13) and is, therefore, ripe for resolution. For the reasons set forth below it is recommended that this petition for writ of habeas corpus be denied since the Bureau of Prisons has accurately calculated the sentence credit that Garcia is entitled to receive on the facts of this case in accordance with the law which governs such credits.

## II.  Discussion

### A.  Garcia's Petition Fails on its Merits.

Garcia's petition invites this court to review a sentence credit calculation conducted by the Bureau of Prisons for an inmate who was serving both state and federal sentences. There are two component parts to the legal analysis we are called upon to perform in a case such as this, where we examine a Bureau of Prisons sentence credit determination. It is well settled that: "The computation of a federal sentence requires consideration of two separate issues. Initially, we determine the commencement date of the federal sentence and then turn to the extent to which a defendant can receive credit for time spent in custody prior to commencement of sentence." Binford v. United States, 436 F.3d 1252, 1254-55 (10th Cir. 2006). As this Court has aptly observed: "'Computing a federal sentence requires two separate determinations: first, when the sentence commences; and, second, to what extent the

defendant in question may receive credit for any time already spent in custody.' United States v. Smith, 812 F.Supp. 368, 370 (E.D.N.Y.1993)." Chambers v. Holland, 920 F. Supp. 618, 621 (M.D.Pa. 1996).

Each of these legal determinations, in turn, is made against the backdrop of a specific statutory and regulatory system for calculating credit for time served by federal prisoners. A key component of this system involves the delegation of authority for initial sentence computations. By law:

> The Attorney General is responsible for computing federal sentences for all offenses committed on or after November 1, 1987, United States v. Wilson, 503 U.S. 329 (1992) and 18 U.S.C. § 3585, and has delegated that authority to the Director of the Bureau of Prisons. 28 C.F.R. § 0.96 (1992). . . . [Thus], [t]he decision to grant or deny credit for time served prior to the date of sentencing vests initially in the BOP, not the sentencing judge.

Chambers v. Holland, supra, 920 F. Supp. at 621.

However, as the Supreme Court has recognized,  United States v. Wilson, 503 U.S. 329 (1992), in calculating credit for time served, the Bureau of Prisons is guided by statute; namely, 18 U.S.C. § 3585, which provides that:

> (a) Commencement of sentence.-A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.
>
> (b) Credit for prior custody.-A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences-

(1) as a result of the offense for which the sentence was imposed; or

(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence.

18 U.S.C. § 3585.

This statute, and case law construing the statute, then guide us in addressing the two questions which lie at the heart of Garcia's habeas petition: first, when did Garcia's sentence commence; and, second, to what extent may Garcia receive credit for any time already spent in custody?

With respect to the first of these questions regarding when Garcia's sentence commenced, it is clear that "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody . . . ." 18 U.S.C. § 3585(a). Therefore, as a general rule, "[a] federal sentence commences when the defendant is received by the Attorney General for service of his . . . sentence. See 18 U.S.C. § 3585(a). See also United States v. Pungitore, 910 F.2d 1084, 1118-19 (3d Cir.1990). As a result, a federal sentence [typically] cannot begin to run earlier than on the date on which it is imposed. See United States v. Labeille-Soto, 163 F.3d 93, 98 (2d Cir.1998)." Taylor v. Holt, 309 F.Appx. 591, 592-93 (3d Cir.  2009). Applying this straightforward guidance, in this case the Bureau of Prisons correctly concluded that Garcia's sentence commenced on April 4, 2005, the date his federal sentence was actually imposed, a

date which is entirely consistent with the settled principle that "a federal sentence [typically] cannot begin to run earlier than on the date on which it is imposed. <u>See United States v. Labeille-Soto</u>, 163 F.3d 93, 98 (2d Cir.1998)." <u>Taylor v. Holt</u>, 309 F.Appx. 591, 592-93 (3d Cir.  2009).

Section 3585, and case law construing this statute, also define for us the answer to the second question we must examine: to what extent may Garcia receive credit for any time already spent in custody against his federal sentence. In this regard, we begin with the proposition that Garcia may not receive: "credit for time spent in state custody prior to sentencing in a federal case because 18 U.S.C. § 3585(b) prohibits this double credit. <u>United States v. Wilson</u>, 503 U.S. 329, 337 (1992)." <u>Taylor v. Holt, supra</u> 309 F.Appx. at 593.

It is also clear beyond any dispute that a defendant, like Garcia,  who is serving a state sentence but is taken temporarily from state custody to federal court pursuant to a writ of habeas corpus *ad prosequendum* does not come into federal "custody" for purposes of calculating prison sentence credit under § 3585. Indeed, courts have repeatedly examined this question, and consistently held that temporarily holding a prisoner on a writ does not equate to custody for purposes of calculating sentence credit. <u>See, e.g.</u>, <u>Rashid v. Quintana</u>, No. 09-4079, 2010 WL 1141386 (3d Cir. March 25, 2010); <u>Taylor v. Holt</u>, <u>supra</u>; <u>United States v. Hayes</u>, 535 F.3d 907 (8th Cir. 2008);

D'Amario v. Zenk, 131 F. App'x 381 (3d Cir. 2005); Thomas v. Whalen, 962 F.2d 358

(4th Cir. 1992); Chambers v. Holland, supra; Miller v. United States, 826 F. Supp. 636

(N.D.N.Y. 1993); United States v. Smith, 812 F. Supp. 368 (E.D.N.Y. 1993); United

States v. Killion, 788 F. Supp. 1165 (D. Kan. 1992). Accordingly, these cases

uniformly reject efforts by federal prisoners to secure jail-time credit for periods in

which they were held temporarily in federal court on a federal writ while serving their

state sentences. Id. The rationale for this rule, which enjoys broad acceptance by the

courts, can be simply stated:

> A federal sentence does not begin to run, . . ., when a defendant is
> produced for prosecution in federal court pursuant to a federal writ of
> habeas corpus ad prosequendum. Rather, the state retains primary
> jurisdiction over the prisoner, and federal custody commences only when
> the state authorities relinquish the prisoner on satisfaction of the state
> obligation. Thomas v. Whalen, 962 F.2d 358, 361 n. 3 (4th Cir.1992);
> Hernandez v. United States Attorney General, 689 F.2d 915, 918-19 (10th
> Cir.1982); Roche v. Sizer, 675 F.2d 507, 509-10 (2d Cir.1982); see also
> Thomas v. Brewer, 923 F.2d 1361, 1366-67 (9th Cir.1991) (producing
> state prisoner under writ of habeas corpus ad prosequendum does not
> relinquish state custody); Salley, 786 F.2d at 547-48 (defendant produced
> and sentenced in federal court via writ of habeas corpus ad prosequendum
> did not begin to serve consecutive federal sentence until delivered into
> federal custody). This rule derives from the fact that the federal writ of
> habeas corpus ad prosequendum merely loans the prisoner to federal
> authorities. Whalen, 962 F.2d at 361 n. 3; In re Liberatore, 574 F.2d 78,
> 79 (2d Cir.1978); Crawford v. Jackson, 589 F.2d 693, 695 (D.C.Cir.1978).

United States v. Smith, 812 F. Supp. 368, 370-71 (E.D.N.Y. 1993).

These basic legal tenets control here, and compel denial of Garcia's petition for

writ of habeas corpus. In this case it is undisputed that Garcia commenced his sentence for the federal drug trafficking offense on April 4, 2005, the date his federal sentence was actually imposed.

At the time that he was sentenced for this federal drug trafficking offense that he committed while on state parole, Garcia had already been sentenced in state court for his prior parole violations. In connection with that prior state parole violation sentence, Garcia received credit against his state sentence for the time period from June 2003 to April 2005. Since Garcia received credit for this time in prison against his state parole violation sentence he was not entitled to further credit for this period of imprisonment against his federal jail sentence. Indeed, it is well settled that Garcia may not receive such: "credit for time spent in state custody prior to sentencing in a federal case because 18 U.S.C. § 3585(b) prohibits this double credit. United States v. Wilson, 503 U.S. 329, 337 (1992)." Taylor v. Holt, supra 309 F. App'x at 593.

In sum, the sentence credit calculation undertaken in this case paid full fidelity to § 3585's mandate that: "A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences . . ., that has not been credited against another sentence." 18 U.S.C. § 3585(b). Moreover, in reaching this calculation of Garcia's jail time credit, the Bureau of Prisons closely followed both the spirit and the letter of the law. Consistent with case law, it declined to credit Garcia for time that was already credited

against his separate state sentence. Thus, this federal jail time credit calculation provided Garcia with proper credit for his prior custody while avoiding one of the evils condemned by the Supreme Court in <u>United States v. Wilson</u>, 503 U.S. 329, 337 (1992), since it "made clear that [the] defendant could not receive a double credit for his detention time." <u>Id</u>.

Accordingly, since the Bureau of Prisons' sentence credit calculation fully comports with the law, and provides Garcia all the credit he is entitled to receive, Garcia's petition for writ of habeas corpus should be denied.

## III. <u>Recommendation</u>

Accordingly, for the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus, IT IS RECOMMENDED that the Petition be DENIED, and that a certificate of appealability should not issue.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified   proposed findings or

recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 24th day of November, 2015.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge